1

2

3

4

5

6                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
7                              AT TACOMA

8    KENNETH A.,

9                          Plaintiff,              CASE NO. 2:19-CV-1425 – DWC

10        v.                                       ORDER REVERSING AND
                                                   REMANDING DEFENDANT'S
11   COMMISSIONER OF SOCIAL                         DECISION TO DENY BENEFITS
     SECURITY,
12
                           Defendant.
13

14        Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of

15   Defendant's denial of Plaintiff's applications for supplemental security income ("SSI") and

16   disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil

17   Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by

18   the undersigned Magistrate Judge. *See* Dkt. 2.

19        After considering the record, the Court concludes the Administrative Law Judge ("ALJ")

20   erred when he improperly evaluated several medical opinions. Therefore, the ALJ's error is

21   harmful, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. §

22   405(g) to the Commissioner of the Social Security Administration ("Commissioner") for further

23   proceedings consistent with this Order.

24

## FACTUAL AND PROCEDURAL HISTORY

On January 30, 2009, Plaintiff filed applications for DIB and SSI, alleging disability as of July 1, 2008. *See* Dkt. 11, Administrative Record ("AR") 651. The applications were denied upon initial administrative review and on reconsideration. *See* AR 651. A hearing was held before ALJ Thomas Robinson on November 24, 2010, who found Plaintiff not disabled. *See* AR 368. Plaintiff requested review of the ALJ's decision, and the Appeals Council granted Plaintiff's request on April 16, 2012, and remanded the case back to the ALJ. AR 678. A second hearing took place on November 26, 2012, in front of ALJ Larry Kennedy, who found Plaintiff not disabled. AR 674. Plaintiff requested this Court review the ALJ's decision, and this Court remanded Plaintiff's case back to the Commissioner on February 12, 2016. AR 697-704. ALJ Kennedy[1] denied Plaintiff's claim on May 17, 2018. AR 674. Plaintiff's appeal was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 650; 20 C.F.R. § 404.981, § 416.1481.

In the Opening Brief, Plaintiff maintains the ALJ erred by improperly: (1) evaluating Plaintiff's testimony; and (2) considering the medical opinion evidence. Dkt. 17. As a result of these alleged errors, Plaintiff requests an award of benefits. Dkt. 17, p. 23.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

---

[1] Any reference to "the ALJ" or "the ALJ's decision" in this brief refers to ALJ Kennedy and his May 17, 2018 decision.

I.    **Whether the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's testimony not fully supported.**

Plaintiff contends the ALJ erred by failing to provide specific, clear, and convincing reasons for finding Plaintiff's subjective symptom testimony not fully supported. Dkt. 17, pp. 2-13.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony regarding symptoms, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure[s] to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *Id.* at 579.[2]

---

[2] On March 28, 2016, the Social Security Administration changed the way it analyzes a claimant's subjective symptom testimony. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); 2016 WL 1237954 (Mar. 24, 2016). The term "credibility" is no longer used. 2016 WL 1119029, at *1. Further, symptom evaluation is no longer

1    At the November 2017 hearing, Plaintiff testified that he has had depression for his entire

2    life. AR 1091. Plaintiff testified he has suicidal thoughts when he gets depressed. AR 1095. He

3    testified he does not have any friends because of his depression and cannot keep jobs because his

4    depression causes him to miss work. AR 1095-1011. Plaintiff testified he is depressed for seven

5    to eight days a month, and cries four to five times a week. AR 1095, 1100.

6    The ALJ summarized Plaintiff's subjective symptom testimony and found Plaintiff's

7    "medically determinable impairments could reasonably be expected to cause the alleged

8    symptoms[.]" AR 657. However, the ALJ found Plaintiff's "statements concerning the intensity,

9    persistence and limiting effects of these symptoms are not entirely consistent with the medical

10    evidence and other evidence in the record[.]" AR 657. The ALJ provided several reasons to

11    discount Plaintiff's subjective symptom testimony: (1) Plaintiff's allegations are out of

12    proportion to his "relatively minimal" health treatment; (2) notes from Plaintiff's mental health

13    treatments show "a strong situational component" to his mental condition; (3) providers have

14    regularly observed that Plaintiff is cooperative and pleasant during appointments, with normal

15    mood and affect, full alertness and orientation, no suicidal or homicidal ideation, and no acute

16    distress; (4) any issues with Plaintiff's tics/twitching have generally not been documented; (5)

17    because Plaintiff has been "less than forthcoming to examiners/providers about substance abuse

18    history", his testimony is unreliable; (6) Plaintiff's allegations are inconsistent with his activities

19    of daily living; (7) Plaintiff has a "disability conviction" and is "convinced he isn't able to work"

20    despite several doctors opining that vocational training would eliminate or minimize barriers to

21

22    _____

an examination of a claimant's character. *See id.* at *10 ("adjudicators will not assess an individual's overall
23    character or truthfulness"). However, the applicable Ninth Circuit case law still refers to the term "credibility." *See
*Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (noting SSR 16-3p is consistent with existing Ninth
24    Circuit precedent). Thus, at this time, the Court will use "credibility" and "subjective symptom testimony"
interchangeably.

employment; (8) "[a]s a witness at the November 2017 hearing, [Plaintiff] came across as unreliable and untrustworthy"; and (9) several other instances throughout the record that reveal "other discrepancies" which undermine Plaintiff's reliability. AR 657-664.

The Court finds the ALJ's second reason is specific, clear, and convincing. Accordingly, the Court need not access the other reasons provided by the ALJ, as any error would be harmless. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("because one reason for discounting Plaintiff's credibility was improper does not render the ALJ's credibility determination invalid as long as the credibility determination is supported by substantial evidence in the record").

The ALJ's second reason for discounting Plaintiff's testimony, that notes from Plaintiff's mental health treatments show "a strong situational component" to his mental condition, is specific, clear, and convincing. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (noting the fact a claimant stopped working due to being laid off, rather than due to his injuries, was a clear and convincing reason for discounting the claimant's testimony); *Wright v. Colvin*, 2014 WL 3729142, at *5-6 (E.D. Wash. July 25, 2014) (noting the ALJ properly discounted a claimant's testimony concerning her mental impairments when the record revealed her symptoms were the result of "situational stressors and not related to her [mental] impairments"). The ALJ lists several situational factors reported by Plaintiff that contribute to his mental condition. For example, LMHC Lea Lin noted that Plaintiff "reported [an] increase in depressive symptoms-related to [an] increase in situational stressors (e.g. financial stress, continued unemployment, medical concern)." AR 954. Ms. Lin also noted in December 2016 that Plaintiff said the holiday season increases the intensity of his symptoms. AR 925. Further, the ALJ supports this finding with substantial evidence by citing to places in the record that indicate Plaintiff's symptoms were exacerbated by

difficulties in his relationships with others. AR 900, 902, 904, 940, 1014, 1026. The ALJ also notes Plaintiff complained of additional situational stressors, such as finances and frustration with the SSA disability process. AR 930, 537. The ALJ could properly rely on this evidence to discount the severity of Plaintiff's limitations, and the ALJ did not err by doing so here.

**II.        Whether the ALJ properly considered the medical opinion evidence.**

Plaintiff asserts the ALJ failed to properly consider the medical opinions of ten of Plaintiff's treating and examining health care providers: Drs. Susan Hakeman, Walker Lind, Renee Eisenhauer, Dana Harmon, Kerry Barlett, Anselm Parlatore, and Philip Burns, Casey Barten, Ashley Thomasson, and Katherine Scott. Dkt. 17, pp. 13-22.

In assessing an acceptable medical source, an ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester*, 81 F.3d at 830 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-831 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). "Other medical source" testimony "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Turner v. Comm'r of Soc. Sec.*, 613

F.3d 1217, 1224 (9th Cir. 2010). "Further, the reasons 'germane to each witness' must be specific." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

The ALJ first collectively discounted the opinions of ten of Plaintiff's health care providers (listed above) by using the same five reasons at once. AR 666-668. The ALJ gave these opinions little weight because they: (1) are inconsistent with Plaintiff's minimal health treatment; (2) are inconsistent with Plaintiff's treatment records; (3) are inconsistent with Plaintiff's "frequently normal to near normal performance on testing" which revealed Plaintiff's grossly intact cognitive functioning; (4) are inconsistent with Plaintiff's activities; and (5) rely largely on Plaintiff's self-report. AR 666-668. In support of each of these reasons, the ALJ merely stated the opinions are inconsistent with the record as "discussed above". AR 666-668. The ALJ's approach fails to appreciate the inherent differences within each opinion. By doing so, the ALJ has not drawn a sufficient connection to which part of which opinions the ALJ is discounting and why. By using a sweepingly broad discounting of multiple opinions without discussing specifically why each opinion deserves little weight, the ALJ has failed to "set forth his own interpretations and explain why they, rather than the doctors', are correct". *Embrey,* 849 F.2d at 421; *see also Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted) ("the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence"). Accordingly, the ALJ's first five reasons are invalid, as the Court is unable to discern whether the ALJ's conclusions were supported by

substantial evidence. The ALJ then proceeded to discount these opinions individually for other reasons.

A. Dr. Hakeman

The ALJ addressed Dr. Hakeman's February 2009, January 2010, December 2011, January 2014, and June 2017 opinions. AR 666-668. The Court will address each of Dr. Hakeman's opinions sequentially.

1. *February 2009*

Dr. Hakeman had a consultation with Plaintiff in February 2009 and filled out a psychological evaluation of Plaintiff using a Washington State Department of Social and Health Services ("DSHS") form. AR 999-1002. She diagnosed Plaintiff with major depression, anxiety, motor tics, and cannabis dependence, in early remission. AR 1000. She opined to several moderate to marked functional limitations. AR 1001. For example, Dr. Hakeman opined Plaintiff was markedly impaired in his ability to care for self, including personal hygiene and appearance, and his ability to control physical or motor movements and maintain appropriate behavior. AR 1001. Dr. Hakeman also opined Plaintiff was markedly impaired in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. AR 1001.

The ALJ gave Dr. Hakeman's opinion little weight, saying:

(1) With specific regard to Dr. Hakeman's February 2009 opinion, it is internally inconsistent with the benign objective signs. For example, while the claimant had dysphoric mood and decreased affect, with some motor ticks, he retained appropriate dress, normal speech, goal-directed thought processes, full alertness, cooperative behavior, and normal thought content, without signs of suicidal ideation or psychosis. Dr. Hakeman's personal observations of the claimant support some mental limitations, but not to the degree of marked limitations.

(2) Dr. Hakeman's opinion is internally inconsistent with the claimant's performance on testing. For instance, the claimant was fully oriented, with fair insight/judgment. He was able to recall 3/3 objects immediately and after 5 minutes, spell *world* forward and backward, and accurately perform serial 7 subtractions from 100. His

essentially normal performance on testing does not corroborate Dr. Hakeman's assessment of marked mental limitations.

(3) Dr. Hakeman's opinion of marked limitations likewise appears internally inconsistent with her opinion that treatment would substantially improve or restore the claimant's ability to work.

AR 668-669 (citations omitted) (numbering added).

First, the ALJ found Dr. Hakeman's February 2009 opinion internally inconsistent with the benign objective signs. AR 668. He provided examples of normal findings from the February 2009 consultation, but did not explain how these findings are inconsistent with the opined marked limitations. *See* AR 668. The ALJ stated that Dr. Hakeman's "observations of the claimant support some mental limitations, but not to the degree of marked limitations." AR 668. The ALJ failed to detail why Dr. Hakeman's observations do not support marked limitations. Instead, the ALJ has inappropriately provided his own interpretation of the medical data from the February 2009 consultation. *See Nguyen v. Chater*, 172 F.3d 31, 35 (9th Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms…"); *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted). Without more analysis, the Court is unable to determine if this first reason is supported by substantial evidence. *See Treichler*, 775 F.3d at 1103. Accordingly, the ALJ has failed to show how Dr. Hakeman's February 2009 opinion is internally inconsistent with the benign objective observed during the consultation.

Second, the ALJ found Dr. Hakeman's February 2009 opinion was internally inconsistent with Plaintiff's performance on testing done during the consultation. AR 668-669. The ALJ listed examples of normal results from the consultation, and concluded, without support, that Plaintiff's "essentially normal performance on testing does not corroborate Dr. Hakeman's assessment of marked limitations." AR 669. The ALJ did not explain why these "normal" test results are inconsistent with the opined marked limitations. *See Treichler*, 775 F.3d at 1103. Further, the ALJ did not explain why his interpretation, rather than Dr. Hakeman's, was correct. As the Ninth Circuit has stated:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, *even when the objective factors are listed seriatim*. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Embrey,* 849 F.2d at 421 (emphasis added).

Without further explanation why his interpretation and not Dr. Hakeman's is correct, the ALJ's reasoning is conclusory. *See Hess v. Colvin*, No. 14–8103, 2016 WL 1170875, at *3 (C.D. Cal. Mar. 24, 2016) (an ALJ merely offers her conclusion when her statement "stands alone, without any supporting facts…"). Accordingly, the ALJ has failed to show how Dr. Hakeman's February 2009 opinion is internally inconsistent with Plaintiff's performance on the testing done during the consultation.

Third, the ALJ found Dr. Hakeman's February 2009 opinion of marked limitations was internally inconsistent with Dr. Hakeman's statement that treatment would substantially improve or restore Plaintiff's ability to work. AR 669. But since the ALJ did not provide any further analysis, it is not apparently obvious why Plaintiff could not have marked limitations yet still be able to improve with treatment. *See Treichler*, 775 F.3d at 1103. Accordingly, the

ALJ has failed to show how Dr. Hakeman's February 2009 opinion is internally inconsistent with Dr. Hakeman's opinion that treatment would substantially improve or restore Plaintiff's ability to work.

For the above stated reasons, the Court concludes the ALJ failed to provide specific, legitimate reasons supported by substantial evidence for assigning little weight to Dr. Hakeman's February 2009 opinion. Accordingly, the ALJ erred.

"[H]armless error principles apply in the Social Security context." *Molina*, 674 F.3d at 1115. An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

Had the ALJ given great weight to Dr. Hakeman's February 2009 opinion, the ALJ may have included additional limitations in the RFC. For example, Dr. Hakeman opined Plaintiff was markedly impaired in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. AR 1001. In contrast, in the RFC, the ALJ did not include any absenteeism or productivity limitations. *See* AR 655-656. Therefore, if Dr. Hakeman's February 2009 opinion was given great weight and additional limitations were included in the RFC and in the hypothetical questions posed to the vocational expert ("VE"), the ultimate disability determination may have changed. Accordingly, the ALJ's errors are not harmless and require reversal.

### 2. January 2010

Dr. Hakeman conducted a psychological evaluation of Plaintiff and filled out a DSHS form in January 2010. AR 993-998. Dr. Hakeman opined to several moderate to marked limitations, including marked limitations in Plaintiff's ability to learn new tasks and to exercise judgment and make decisions. AR 996. The ALJ discounted this opinion using the same analysis as he did for Dr. Hakeman's February 2009 opinion—that the opinion was internally inconsistent with the benign objective signs, with Plaintiff's performance on testing, and with Dr. Hakeman's opinion that treatment would substantially improve or restore Plaintiff's ability to work. AR 669. The ALJ also made the same errors at each point in the analysis. *See* Section II.A.1., *supra*. Because the ALJ's treatment of Dr. Hakeman's January 2010 opinion is nearly identical to his treatment of Dr. Hakeman's February 2009 opinion, the Court concludes the ALJ also erred in his analysis of Dr. Hakeman's January 2010 opinion. Therefore, the ALJ is directed to reassess Dr. Hakeman's January 2010 opinion on remand.

### 3. December 2011

Dr. Hakeman conducted a psychological evaluation of Plaintiff and filled out a DSHS form in December 2011. AR 980-982. She diagnosed Plaintiff with dysthymia, PTSD by history, tic vs. twitching, and alcohol abuse, in full sustained remission. AR 980. When asked to indicate any mental health symptoms that affect Plaintiff's ability to work, Dr. Hakeman wrote that Plaintiff "twitches at interviews." AR 981. The ALJ discounted Dr. Hakeman's December 2011 opinion and gave it little weight because Dr. Hakeman "failed to provide an assessment of the claimant's mental residual functional capacity." AR 669. The Court agrees. Without a link from Plaintiff's twitching to some type of vocational limitation, Dr. Hakeman's December 2011 opinion does not provide any clarity regarding Plaintiff's ability to work. The ALJ also mentions Dr. Hakeman's

1    December 2011 opinion in another portion of his analysis, saying her December 2011 opinion was

2    inconsistent with a portion of the opinion that Plaintiff doesn't require a protective payee and that

3    vocational training would minimize/eliminate barriers to employment. AR 981. Because the ALJ

4    provided a valid reason for discounting Dr. Hakeman's December 2011 opinion, the Court declines

5    to assess whether this reason was proper to discount the December 2011 opinion, as any error

6    would be harmless. *See Presley-Carrillo v. Berryhill*, 692 Fed. Appx. 941, 944-45 (9th Cir. 2017)

7    (citing *Carmickle*, 533 F.3d at 1162 (although an ALJ erred on one reason he gave to discount a

8    medical opinion, "this error was harmless because the ALJ gave a reason supported by the

9    record" to discount the opinion). Thus, the ALJ's reason for discounting Dr. Hakeman's

10   December 2011 opinion was specific and legitimate.

11                       *4. January 2014 and June 2017*

12        Dr. Hakeman completed additional DSHS forms following consultations with Plaintiff

13   in January 2014 and June 2017. AR 976-979, 971-974. In both consultations, Dr. Hakeman

14   opined Plaintiff had several moderate to severe limitations. For example, Dr. Hakeman opined

15   Plaintiff was severely limited in performing activities within a schedule, maintaining regular

16   attendance, and being punctual within customary tolerances without special supervision. AR

17   973, 978. She also opined Plaintiff was severely limited in completing a normal work day and

18   work week without interruptions from psychologically based symptoms. AR 973, 978.

19        The ALJ dismissed both of these opinions simultaneously, because "they are internally

20   inconsistent with [Dr. Hakeman's] opinion that he [sic] claimant does not require a protective

21   payee and that vocational training/services would minimize/eliminate barriers to employment."

22   AR 669. The ALJ does not explain the inconsistency, nor does he provide any further analysis.

23   Without an adequate explanation to support the alleged inconsistency, the Court cannot

24

determine if the alleged inconsistency is a valid reason to discredit Dr. Hakeman's January

2014 and June 2017 opinions. *See Blakes*, 331 F.3d at 569; *Treichler*, 775 F.3d at 1103.

Accordingly, the ALJ failed to provide specific and legitimate reasons for discounting Dr.

Hakeman's January 2014 and June 2017 opinions. Thus, the ALJ is directed to reassess these

opinions on remand.

B. Dr. Lind

Dr. Lind, a DSHS examiner, saw Plaintiff in December 2010 and February 2011. AR 988-

992, 983-987. Dr. Lind diagnosed Plaintiff with major depression and alcohol abuse, in sustained

remission. AR 984, 989. At the December 2010 evaluation, Dr. Lind opined to several moderate

limitations. AR 990. At the February 2011 evaluation, Dr. Lind changed the severity of Plaintiff's

limitations from moderate to marked and frequently noted Plaintiff had "[m]ood lability with

periods of suicidal ideation and very low motivation." AR 985, 990. The ALJ discounted these

opinions using the same analysis as he did for Dr. Hakeman's February 2009 opinion—that the

opinions were internally inconsistent with the benign objective signs, with Plaintiff's performance

on testing, and with Dr. Hakeman's opinion that treatment would substantially improve or restore

Plaintiff's ability to work. AR 668-669. The ALJ also made the same errors with discounting Dr.

Lind's opinions as he did at each point in the analysis with Dr. Hakeman's February 2009 opinion.

*See* Section II.A.1., *supra*. Because the ALJ's treatment of Dr. Lind's opinions parallel his

treatment of Dr. Hakeman's February 2009 opinion, the Court concludes the ALJ also erred with

respect to these three reasons. However, in addition to the three reasons listed above, the ALJ

provided a fourth reason to discount Dr. Lind's February 2011 opinion:

> Additionally, with specific regard to Dr. Walker Lind's February 2011 opinion, it
> appears Dr. Walker Lind merely reused her December 2010 DSHS report. Yet,
> despite not re-interviewing or re-evaluating the claimant, Dr. Walker Lind, without
> explanation, changed her rating of his mental functioning from "moderately" limited

to "markedly" limited. Such discrepancies further undermine Dr. Walker Lind's reliability as a witness.

AR 667 (citations omitted).

The Court agrees the record shows that Dr. Lind relied solely on her December 2010 DSHS report for the February 2011 opinion. The lack of subsequent reasoning to support the shift from "moderately" to "markedly" undermines Dr. Lind's February 2011 opinion. *See Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may discredit the opinion of a physician that is "conclusory, brief, and unsupported by the record as a whole or *by objective medical findings*") (emphasis added). While this may undermine Dr. Lind's February 2011 opinion, the ALJ did not explain how the error with the February 2011 opinion also undermines Dr. Lind's December 2010 opinion. Accordingly, the ALJ provided a valid reason for discounting Dr. Lind's February 2011 opinion, but failed to provide a valid reason for discounting Dr. Lind's December 2010 opinion. Thus, the ALJ is directed to reassess Dr. Lind's December 2010 opinion on remand.

C.  Dr. Eisenhauer

In completing a DSHS form to certify Plaintiff for Medicaid, Dr. Eisenhauer reviewed Dr. Hakeman's February 2009 opinion and approved Plaintiff for general assistance expedited Medicaid ("GAX benefits") based on Plaintiff meeting Listing 12.04 due to marked limitations in his mental functioning. AR 488. The ALJ gave Dr. Eisenhauer's opinion little weight because "it is based solely on his review of Dr. Hakeman's February 2009 opinion. Because I reject Dr. Hakeman's February 209 [sic] opinion, I likewise reject Dr. Eisenhauer's December 2009 opinion." AR 669. An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citing *Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) ("In order to discount the opinion of an examining physician in

favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record.") (emphasis in original) (citing *Lester*, 81 F.3d at 831). All of the determinative findings by the ALJ must be supported by substantial evidence. *See Bayliss*, 427 F.3d at 1214 n.1 (citing *Tidwell*, 161 F.3d at 601).

Here, while the ALJ based his treatment of Dr. Eisenhauer's opinion on his rejection of Dr. Hakeman's February 2009 opinion, the Court concluded the ALJ erred in his treatment of Dr. Hakeman's February 2009 opinion. *See* Section II.A.1., *supra*. Therefore, without providing additional reasons for discounting Dr. Eisenhauer's opinion, the ALJ has failed to provide specific and legitimate reasons to reject Dr. Eisenhauer's opinion and thereby rejected Dr. Eisenhauer's opinion entirely, without citation to the record. The ALJ's conclusory statement rejecting Dr. Eisenhauer's opinion is not specific, legitimate, or supported by substantial evidence. *See Lester*, 81 F.3d at 831. Accordingly, the ALJ erred in rejecting Dr. Eisenhauer's opinion and is directed to reassess it on remand.

D. Dr. Harmon

Dr. Harmon filled out a DSHS review of medical evidence form, based on the review several opinions from Dr. Hakeman and Dr. Lind. AR 798-800. Dr. Harmon noted Dr. Hakeman opined about Plaintiff's tic and stated that "his tic was observed by me this week as well." AR 798. Dr. Harmon approved Plaintiff for GAX benefits. AR 798-800. The ALJ dismissed Dr. Harmon's opinion because "it relied solely on his review prior [sic] opinions from Dr. Hakeman and Dr. Walker Lind. Because I reject these opinions for the reasons discussed above, I also give little weight to Dr. Harmon's opinion." AR 671. Here, just as he did in his treatment of Dr. Eisenhauer's opinion, the ALJ based his treatment of Dr. Harmon's opinion on his rejecting the

opinions of Drs. Hakeman and Lind. AR 671; *see* Section II.D., *supra*. Although the ALJ

properly dismissed one of the opinions reviewed by Dr. Harmon, namely Dr. Hakeman's

December 2011 opinion, the Court found the ALJ erred with respect to all of the other opinions

Dr. Harmon reviewed. *See* Sections II.A.1,2,4, and B., *supra*. The ALJ dismissed Dr. Harmon's

opinion based on the premise that the ALJ previously rejected the doctors' opinions upon which

Dr. Harmon relied. But because the Court found that those doctors' opinions were improperly

rejected by the ALJ, it is inappropriate for the ALJ to reject Dr. Harmon's opinion based on his

rejection of those opinions. Further, the ALJ provided no reasoning for rejecting Dr. Harmon's

opinion other than referring to his treatment of the opinions of Drs. Hakeman and Lind. Thus, the

ALJ's reasoning is conclusory. *See Hess*, No. 14–8103, 2016 WL 1170875, at *3. The ALJ's

conclusory statement rejecting Dr. Harmon's opinion is not specific, legitimate, or supported by

substantial evidence. *See Lester*, 81 F.3d at 831. Accordingly, the ALJ erred in rejecting Dr.

Harmon's opinion and is directed to reassess it on remand.

### E.  Dr. Barlett

Dr. Barlett conducted a psychological evaluation of Plaintiff in January 2013. AR 490-495.

Dr. Barlett diagnosed Plaintiff with major depression, PTSD, and alcohol dependence and cannabis

use, in full sustained remission. AR 494. Dr. Barlett provided a medical source statement regarding

Plaintiff's limitations, saying:

> [H]e would be expected to be markedly impaired in his ability to consistently cope
> with demands on a full-time basis in a competitive work week for comprehending
> [sic] recalling, executing, and making judgments about both simple and more
> difficult work tasks. He would also be expected to be markedly to severely impaired
> in his ability to cope with on-the-job interpersonal demands involving co-workers,
> customers, or supervisors due to his alienating interactive manner, fearfulness, and
> difficulty tolerating the stress of normal relationships. Similarly, due to his ongoing
> tendency to be distracted by self-depracative [sic] and other negative rumination he
> would be expected to be markedly impaired in his ability to respond adaptively to
> novel changes in his usual work situation.

AR 494.

The ALJ provided three reasons to discount Dr. Barlett's opinion. First, Dr. Barlett based his opinion on Plaintiff's presentation; second, the opinion is inconsistent with Plaintiff's mental status examination ("MSE"); and third, the opinion is based on Plaintiff's self-report. AR 670. The Court finds that the ALJ's third reason is specific and legitimate. An ALJ may reject a physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). Here, the ALJ properly discounted Plaintiff's testimony. *See* Section I, *supra*. Dr. Barlett's opinion is also based to a large extent on Plaintiff's self-reports. Dr. Barlett reviewed Plaintiff's records, interviewed him, and conducted a brief MSE. AR 490-495. Throughout much of the evaluation, Dr. Barlett wrote that "[Plaintiff] indicated" and "[Plaintiff] reported" the information contained in the evaluation. *See* AR 490-495. Further, the MSE yielded largely normal results, except some "difficulty sustaining vigilance to detail, although it was [Dr. Barlett's] impression that this was due to [Plaintiff's] own depressive and anxious thought processes", which were self-reported. AR 493; *see* AR 491-492. Accordingly, because Dr. Barlett's opinion is based to a large extent on Plaintiff's self-reports and because the ALJ properly discounted Plaintiff's testimony, the ALJ provided a specific and legitimate reason supported substantial evidence for discounting Dr. Barlett's opinion. Because the ALJ provided a valid reason for discounting Dr. Barlett's opinion, the Court declines to assess whether the ALJ's other reasons were proper, as any error would be harmless. *See Presley-Carrillo*, 692 Fed. Appx. At 944-945 (citing *Carmickle*, 533 F.3d at 1162).

F.  Mr. Burns

Mr. Burns, LMHCA, wrote letters stating he had observed Plaintiff for the previous 11 months at Sea Mar Community Health Center ("Sea Mar") and opined that "[s]everal of [Plaintiff's] symptoms make it particularly difficult for the client to find and maintain employment." AR 421. Mr. Burns referenced Plaintiff's course of treatment at Sea Mar, discussed Plaintiff's depression and PTSD, and opined that the symptoms each impairment produced "make [Plaintiff] unable to maintain full time work on a regular and continuing basis." AR 421.

The ALJ dismissed Mr. Burns's opinion and gave it little weight:

> With specific regard to Mr. Burns's October 2011 and May 2012 opinions, he indicates that he has been treating the claimant at Sea Mar since January 2011. A review of the claimant's records at Sea Mar from 2010, 2011, 2012, and 2013, however, indicate that the claimant has only been seen by the following providers: Celia Forno, ARNP; Jana McGlinn, Bonnie Johnson, Robert Hutchings, and Casey Bareten. The lack of any treatment notes from Mr. Burns undermines his reliability as a witness.

AR 669 (citations omitted).

The ALJ dismissed Mr. Burns's opinion because the record does not contain any notes from his treatment of Plaintiff. AR 669. An ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan*, 242 F.3d at 1150 (citations omitted). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Id.* (citations omitted). The duty to fully and fairly develop the record may be discharged "in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after

the hearing to allow supplementation of the record." *Id.* at 1150 (citing *Tidwell*, 161 F.3d at 602; *Smolen*, 80 F.3d at 1279.

Here, the ALJ found that the record was inadequate—specifically, that there were no treatment records from Mr. Burns and yet the record included an opinion from Mr. Burns in which Mr. Burns referenced Plaintiff's course of treatment at Sea Mar. By finding the record was inadequate to allow for proper evaluation of Mr. Burns's opinion, the ALJ triggered his "duty to conduct an appropriate inquiry." Yet there is no indication that the ALJ discharged this duty to fully and fairly develop the record. Therefore, the ALJ erred. Even if the Court were to find otherwise, the Court has found the ALJ committed harmful error and is remanding to re-evaluate several medical opinions. Thus, the ALJ shall afford Plaintiff an opportunity to further develop the record and submit additional medical records and evidence, including any evidence pertaining to Mr. Burns's opinion.

G. Mr. Barten

Mr. Barten, MA, MHP, wrote a letter stating Plaintiff exhibited chronic symptoms of anxiety, depression, mood instability, anger, and problems maintaining basic daily living tasks. AR 457. Mr. Barten noted that Plaintiff had been diagnosed with major depressive disorder. AR 457. Mr. Barten had been working with Plaintiff for six months at that time and opined he "experiences a multitude of functional impairments both caused and exasperated by symptoms of this disorder." AR 457.

The ALJ dismissed Mr. Barten's opinion because his treatment notes "show no formal mental status testing and sporadic objective signs. His opinion therefore appears to rely largely on claimant's self-report. For the reasons discussed above, the claimant's self-report is not fully reliable." AR 669. An ALJ may reject a physician's opinion "if it is based 'to a large extent' on a

claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041. Here, the ALJ's reasoning is inconsistent with Mr. Barten's treatment notes. Throughout the course of six months Mr. Barten conducted clinical visits with Plaintiff, observing his behavior and interviewing him. For example, in March 2013, Mr. Barten wrote that Plaintiff had frequent shifts in emotion during the visit, crying and laughing at times. AR 524. In November 2012, Mr. Barten wrote that Plaintiff "appeared markedly more depressed" and noted that Plaintiff made "numerous comments related to self-loathing and his apparent inability to change." AR 536. Mr. Barten also wrote in November 2012 that Plaintiff "was emotionally unstable crying throughout w/ periods of rage and anger" during a visit. AR 537. Thus, Mr. Barten based his opinion on more than just Plaintiff's self-report. Additionally, there is no indication that Mr. Barten relied more heavily on Plaintiff's self-report than on his own interviews and observations. Accordingly, the ALJ failed to provide a germane reason for discounting Mr. Barten's opinion and is directed to reassess it on remand.

H.  Ms. Thomasson

Ms. Thomasson, Plaintiff's case manager at Lydia Place/Whatcom Homeless Service Center, wrote a letter describing Plaintiff's inability to maintain any employment during the past decade. AR 540. Ms. Thomasson referred to Plaintiff's explanations about why he has been unable to maintain employment, including lacking skills to cope with rigorous workplace demands and healthily communicate with superiors and colleagues. AR 540. The ALJ dismissed Ms. Thomasson's opinion for several reasons, including that Ms. Thomasson, as a case manager, has not treated Plaintiff for his mental health conditions, and is therefore unqualified to assess Plaintiff's mental functioning. AR 671. The Court agrees. Ms. Thomasson works as a case manager, and has no apparent medical training, and is thus not qualified to assess Plaintiff's

mental health. Accordingly, the ALJ provided a germane reason for discounting Ms.

Thomasson's opinion.

     I.   Dr. Parlatore and Ms. Scott

        Dr. Parlatore conducted a psychiatric evaluation of Plaintiff in November 2015. AR 812-816. He diagnosed Plaintiff with depression, tic disorder, and PTSD. AR 815. After reviewing Plaintiff's history, conducting an interview, and conducting an MSE, Dr. Parlatore opined Plaintiff "would have marked difficulty dealing with the usual stress encountered in a work environment." AR 816. Dr. Parlatore also opined to other impairments that would affect his ability to work. AR 815-816. In July 2015, Ms. Scott, MSW, LICSW, wrote a letter indicating that Plaintiff had depression and PTSD. AR 806, 975. Ms. Scott opined Plaintiff "experiences a multitude of functional impairments both caused and exasperated by symptoms of these disorders." AR 806, 975.

        As discussed above, the Court found the ALJ erred when discounting Dr. Parlatore's and Ms. Scott's opinions. *See* Section II., *supra*. The ALJ provided no further discussion of these opinions. The ALJ "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-571 (9th Cir. 1995) (*quoting Vincent*, 739 F.2d at 1395). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Id*. at 571. Thus, the ALJ is directed to reassess the opinions of Dr. Parlatore and Ms. Scott on remand.

     **III.**    **Whether this cased should be remanded for an award of benefits.**

        Plaintiff argues this matter should be remanded with a direction to award benefits. *See* Dkt. 17, p. 23. The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for

additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed[.]" *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). The Court has determined, on remand, the ALJ must re-evaluate several opinions on remand, including: Dr. Hakeman's February 2009, January 2010, January 2014, and June 2017 opinions; Dr Lind's December 2010 opinion; Dr. Eisenhauer's opinion; Dr. Harmon's opinion; Dr. Parlatore's opinion; Mr. Burns's opinion; Mr. Barten's opinion; and Ms. Scott's opinion. Therefore, there are outstanding issues which must be resolved and remand for further administrative proceedings is appropriate.

CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 8th day of April, 2020.

David W. Christel
United States Magistrate Judge